E-FILED 2017 JUL 04 2:13 PM POLK - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT IN AND FOR POLK COUNTY

| Andrew Gorsche,<br>Plaintiff,<br><br>v.<br><br>Wells Fargo Bank, N.A.,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Case No.<br><br>PETITION AT LAW<br>JURY DEMAND |
|---|---|---|

COMES NOW the Plaintiff, Andrew Gorsche ("Plaintiff") and for his cause of action states:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff was at all times relevant to this dispute a resident of Polk County, Iowa.

2. Defendant, Wells Fargo Bank, N.A., is an Iowa corporation, and at all times relevant to this dispute, has a place of business in Polk County, Iowa, at 800 Walnut Street, Des Moines, IA 50309.

3. A charge of employment discrimination on the basis of disability, as per Iowa Code 216.6(1)(a), was filed with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the commission of the unlawful employment practice alleged herein.

4. A Notification of Right to Sue was received from the Iowa Civil Rights Commission on May 31, 2017.

5. All acts set forth in this Petition at Law occurred in Polk County, Iowa.

6. All the discriminatory employment practices alleged herein were committed within the state of Iowa.

7. Wells Fargo employs 4 or more employees and is an "employer" within the meaning of Section 216.2(7) of the Iowa Code.

**STATEMENT OF FACTS**

8. On or about October 22, 2015, Plaintiff took a job as a mortgage generator on the Premier 1 Mortgage Team at Wells Fargo, having already worked 1.5 years on a different Wells Fargo mortgage team.

9. Prior to this date, Plaintiff was an employee of a Wells Fargo subsidiary Military Family Home Loans, LLC.

10. Plaintiff was told during the hiring process that this job would allow for more flexible hours, working remotely and would not require him to sit at a desk all the time.

**EXHIBIT A**

11. Prior to applying for this job, Plaintiff observed other employees in the Premier department working flexible schedules and remotely. He continued to observe flexible scheduling and remote working while working at Premier and also after going on lease

12. Plaintiff suffers from Chronic Venous Insufficiency, Lymphedema and vasovagal pre-syncope (near-fainting), a chronic lymphatic disorder that causes swelling in Plaintiff's legs, as well as arthritis. A flexible schedule that did not require sitting at a desk all the time would help reduce Plaintiff's chronic pain, while still allowing for him to be a productive member of the company.

13. In November 2015, Plaintiff needed to take intermittent FMLA leave and short term disability in order to take care of some medical concerns related to his disability.

14. Plaintiff's doctor recommended he be able to work from home once in a while, that he "would work best in a home-based setting," as it would allow him to stand up or lay down as needed. Mr. Gorsche tried a few different accommodations, working with his doctor, to try to achieve a setting in the office that met his needs but in the end it did not work.

15. At that time, Plaintiff asked his manager, Robert Carpenter (Carpenter), if he could work from home once in a while, as the intermittent FMLA allowed Plaintiff to still work. This request was denied.

16. Carpenter is an employee of Wells Fargo and was one of Plaintiff's supervisors.

17. The nature of the job is such that this would not hurt Plaintiff's ability to solicit clients and do his job effectively.

18. On or about November 17, 2015, Rodney Bell (Bell) took Plaintiff's laptop and cellphone away for three weeks, even though Plaintiff was not on full FMLA leave.

19. Bell is an employee of Wells Fargo and was one of Plaintiff's supervisors.

20. Plaintiff contacted Toni Arnold (Arnold) in the Human Resources department. Plaintiff was told he had to obey his supervisor.

21. Arnold works for Wells Fargo and is in the Human Resources department.

22. Carpenter told Plaintiff that if he would get off FMLA, they would discuss letting Plaintiff work from home.

23. Plaintiff feared if he stopped using intermittent FMLA that he would be fired. He was working 5 hours a day at that point.

24. At one point, Plaintiff was given a verbal warning by Bell for leaving his computer unlocked when not sitting down, even though he was standing next to it.

25. Plaintiff had never been reprimanded for this before, only after he started using intermittent FMLA.

26. In December 2015, the laptop and cellphone were finally returned to Plaintiff after multiple complaints to human resources.

27. After Plaintiff was given the equipment back, he was told he couldn't leave the office with them. Plaintiff observed co-workers being allowed to leave with their equipment.

28. By not taking his equipment home with him, Plaintiff was not able to call customers at night during prime availability hours. This destroyed his ability to make sales and earn a living at this commission-based job.

29. December 2015, Plaintiff was called into a meeting with Carpenter and Bell. In this meeting, Bell told Plaintiff he would not be accommodated, that Bell would change the entire program for all workers if needed in order to keep Plaintiff from being able to work remotely.

30. After this meeting, Plaintiff's condition worsened due to the stress and lack of proper accommodation, and he went on full term FMLA and short term disability.

31. Plaintiff contacted the Wells Fargo accommodation department, and they asked him to provide a written note from his doctor. He was also told that working from home would be ok if the managers said it was okay. He already had the necessary equipment (laptop, system access, cell phone).

32. Plaintiff submitted the doctor's note to his managers, Bell and Carpenter, but they were unwilling to accommodate him as requested. During this entire time, other employees were working from home both full and partial days.

33. Plaintiff requested to transfer to a location closer to his home, which would also have helped accommodate his disability, but this too was denied.

34. Plaintiff inquired why he was not being allowed the same benefit of flexibility that other employees were exercising. He was told he had not earned the right.

35. In mid-January 2016, Plaintiff talked to Sandra Able from human resources again. He was told the job was "not a work from home job," and that he would not receive this privilege, only those who had worked for the company for a longer period could use this accommodation.

36. In February 2016, after the work-from-home accommodation was denied, Plaintiff worked with his doctor to determine if there was another accommodation that might work at the office. It was with this recommendation that Plaintiff returned to work. He gave Carpenter and Bell two weeks' notice of when he would be returning.

37. Upon returning, Plaintiff's equipment and work systems had not been turned on.

38. Plaintiff inquired repeatedly with Carpenter about the status of when his systems would be working again, but was ignored and given no answer.

39. This continued for days, and because his supervisors failed to accommodate his medical needs, he returned to short term disability. Plaintiff felt he was being forced out by the hostile and passive aggressive actions of his supervisors.

40. On or about July 20, 2016, Plaintiff returned to work and attempted to work at a treadmill desk provided by Wells Fargo.

41. The Carpenter and Bell had two months' notice of his return date, but again, his system was not fully functional when Plaintiff returned, and he was unable to work.

42. Upon returning in July 2016, Plaintiff saw colleagues with both more and less seniority working remotely and with flexible schedules.

43. One colleague in particular was able worked over a month without coming into the office. This colleague was later told that because of Plaintiff, he would no longer be allowed to do this.

44. Plaintiff returned to full time FMLA and disability. He felt that Wells Fargo and the Premier 1 management team were discriminating against him due to his disability. Plaintiff knew he would not be able to effectively do his job without reasonable accommodations.

45. Plaintiff's requests for a flexible schedule and the ability to work remotely were reasonable requests given that other, non-disabled, co-workers were given these privileges.

## COUNT 1 – DISCRIMINATION DUE TO DISABILITY

46. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

47. Plaintiff is an "employee" as defined in Iowa Code 216.2(6) (2012).

48. Plaintiff has a "disability" as defined in Iowa Code 215.2(5) (2012).

49. Defendant ("Wells Fargo Bank"), is an "employer" as defined in Iowa Code 215.2(7) (2012)

50. Wells Fargo Bank deprived Plaintiff of his statutory rights by failing and refusing to provide Plaintiff with reasonable workplace accommodations.

51. Wells Fargo Bank deprived Plaintiff of his statutory rights by failing and refusing to provide the same accommodations provided to those who are not disabled.

52. Wells Fargo Bank denied these accommodations to Plaintiff because of Plaintiff's disability.

53. Plaintiff contends that the accommodation to work from home as recommended by his doctor was reasonable as he already had the equipment. If he was provided the same flexibility of working from home provided to other employees, he would have been able to satisfactorily fulfill his duties and be a productive member of the mortgage team.

54. Prior to becoming disabled, Plaintiff was a successful as a mortgage generator in the same line of work as his position at Wells Fargo. Plaintiff is qualified to do the work required.

55. Wells Fargo Bank was aware of Plaintiff's disability, and had been provided documentation from a medical professional.

56. Plaintiff's manager, Rodney Bell, told Plaintiff that Bell would not accommodate him in a meeting during the month of December 2015.

57. Plaintiff's managers allowed other employees to have a flexible schedule and let them work from home, even as they had not disability or medical condition requiring the accommodation, but refused Plaintiff the same flexibility. Said accommodation would have been effective and would not have posed an undue hardship to Defendant.

58. As a direct and proximate result of Defendant's violation of the Iowa Civil Rights Act of 1965, and Iowa Code 216.6, Plaintiff has sustained injuries and damages.

59. As a result of the injuries, Plaintiff has been damaged in the following particulars:
    a. loss of wages and insurance;
    b. past and future medical expenses;
    c. pain and suffering.

60. Plaintiff requests a jury trial in connection with this matter.

WHEREFORE, Plaintiff respectfully requests that this Court fully, fairly and adequately compensate him for the damages sustained and any other relief to which he is entitled.

Respectfully Submitted

*[signature]*

Sheila Knoploh-Odole
Attorney for Plaintiff

KNOPLOH LAW FIRM
2518 Kenway Dr.
Des Moines, IA 50310
515-339-7939
Fax. 877-580-1921
sknodole@hotmail.com

CC: Wells Fargo, Defendant

---

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument was served upon the parties identified herein, in the above-captioned matter at their respective addresses as disclosed on the pleadings hereto by Certified Mail.

Date: 07/02/2017  Signature: /s/Sheila Knoploh-Odole



Fields of opportunities

## STATE OF IOWA

KIM REYNOLDS, GOVERNOR
ADAM GREGG, LT. GOVERNOR

IOWA CIVIL RIGHTS COMMISSION
KRISTIN H. JOHNSON
EXECUTIVE DIRECTOR

5/31/2017

MR. ANDREW GORSCHE
33935 HAWTHORN DRIVE
GRANGER, IA 50109

RE: WELLS FARGO BANK/WELLS FARGO
HOME MORTGAGE
CP# 09-16-69496
EEOC# 846-2016-16390C

Dear MR. ANDREW GORSCHE:

Enclosed is the 'Right-to-Sue' letter as you requested.

Since the Right-to-Sue letter was granted, the Iowa Civil Rights Commission (ICRC) has administratively closed the case cited above effective the date of this letter. ICRC will take no further action on this case.

Once the Right-to-Sue letter is granted, both parties have the right to request a copy of the file. Please be aware there is a charge for copying.

You have ninety days (90) from the date of this letter to initiate or file a lawsuit against the Respondent in District Court. If you have not retained an attorney, you may wish to contact the Iowa Bar Association's Lawyer Referral Services at www.iabar.net A copy of the Right-to-Sue letter is being sent to Respondent(s) for their information.

Thank you for your cooperation.

Sincerely,

Iowa Civil Rights Commission

Enclosure: Right-to-Sue letter

CC: File

ICRD/63 - 23C

Please help us improve our complaint process by completing a short evaluation at
https://www.surveymonkey.com/r/DMD7RFB

Grimes State Office Building, 400 E. 14th Street, Des Moines, Iowa 50319-1004
515 281-4121 / 1-800-457-4416 / Fax 515-242-5840
http://icrc.iowa.gov

Before the Iowa Civil Rights Commission

| | |
|---|---|
| Complainant, <br> Andrew Gorsche | CP#   09-16-69496 <br> EEOC# 846-2016-16390C |
| v. | Request for Administrative <br> Release (Right-to-Sue) |
| Respondents. <br> Wells Fargo Bank / Wells Fargo <br> Home Mortgage | |

**TO THE IOWA CIVIL RIGHTS COMMISSION:**

I am requesting a letter of right-to-sue in State District Court against the above named Respondent.

It is my understanding if the Commission issues a right-to-sue letter, no further action will be taken and this case will be administratively closed by the Commission.

I would also like a right-to-sue release from the Equal Employment Opportunity Commission (EEOC) if appropriate. I understand upon being issued a right-to-sue release from the EEOC, no further action will be taken and this case will be closed administratively by the Commission.

Signature

5-1-17

Date

Represented by Attorney:
Sheila Knoploh-Odole
2518 Kenway Dr.
Des Moines, IA 50310
Office:(515) 339-7939
Cell:  (319) 621-1550
Email: sknodole@hotmail.com

Administrative Release
(Letter of Right-To-Sue)

| To: | From: |
|---|---|
| MR. ANDREW GORSCHE<br>33935 HAWTHORN DRIVE<br>GRANGER, IA 50109 | Iowa Civil Rights Commission<br>Grimes State Office Building<br>400 E. 14th Street<br>Des Moines, Iowa 50319 |
| Complaint CP# 09-16-69496    EEOC# 846-2016-16390C | |

This is your Administrative Release (Right-To-Sue) Letter issued pursuant to Iowa Code § 216.16 and 161 Iowa Administrative Code Section § 3.10. It is issued pursuant to your request.

The conditions precedent found in 161 Administrative Code § 3.10(2) have been met.

With this Right-To-Sue Letter, you have the right to commence an action in district court. That action must be commenced within ninety (90) days of the Right-To-Sue Letter issuance date, **5/31/2017**. The Right-To-Sue Letter is not a finding by the ICRC on the merits of the charge. The ICRC will take no further action in this matter.

A copy of the Right-To-Sue Letter has been sent to the Respondent(s) as shown below. The Administrative Code allows any party to obtain a complete copy of the case file after a Right-To Sue Letter has been issued. Requests for copies should be directed to Kaitlin Smith at kaitlin.smith@iowa.gov

The Iowa Civil Rights Commission
Phone: (515) 281-4121
FAX: (515) 242-5840

cc: File

    WELLS FARGO BANK/WELLS FARGO HOME MORTGAGE

| CASE: LACL138354 | COURT: POLK COUNTY COURTHOUSE | COUNTY: POLK | DATE OF SERVICE 07/06/2017 |
|---|---|---|---|
| PLAINTIFF/PETITIONER ANDREW GORSCHE | DEFENDANT/RESPONDENT: WELLS FARGO BANK, NA | RECEIVED BY: KIP B. IRELAND | PROCESS SERVICE FEE $50 |

To be served upon: WELLS FARGO FINANCIAL, LLC

I, Kip Ireland, being duly sworn, depose and say; I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was affected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient's Name/Address:** WELLS FARGO FINANCIAL, LLC, 505 5TH STREET, STE 729, DES MOINES IA

**Manner of Service:** PERSONALLY SERVED

**Documents:** ORIGINAL NOTICE, RIGHT TO SUE AND PETITION AT LAW JURY DEMAND

**Additional Comments:**

07/11/2017

*Mr. Kip Ireland*
*Ireland Investigations, LLC*
*515-302-9067*

*Subscribed and sworn to before me by the affidavit who is personally known to me*

_____
Date                    Notary Public

_____
Date                    Commission expires